**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL J. DAUGHERTY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 15-cv-2034 (TSC) |
| ) | |
| ALAIN H. SHEER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiffs Michael Daugherty and LabMD, Inc. bring this *Bivens* action against Alain Sheer, Ruth Yodaiken, and Carl Settlemyer, individuals employed by the Federal Trade Commission ("FTC"), alleging that they are liable for violating, and conspiring to violate, Plaintiffs' First, Fourth, and Fifth Amendment rights. (Compl. ¶¶ 153–73). Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 13). For the reasons stated herein, Defendants' motion is GRANTED IN PART and DENIED IN PART.

**I.      BACKGROUND**

The events of this case stretch from 2008 through the present. Throughout this time, Defendants Sheer, Yodaiken, and Settlemyer worked for the FTC and investigated Plaintiffs LabMD, Inc. and Daugherty, LabMD's sole owner and chief executive officer, for acts that potentially violated the FTC Act. (Compl. ¶ 1). In May 2008, LabMD was notified by Tiversa, a cybersecurity firm seeking to sell its services to Plaintiffs, that a 1,718-page file containing the personal and confidential health information of approximately 9,300 patients was available for anyone to download on a peer-to-peer file sharing network. (*Id.* ¶ 48). LabMD then investigated its own computers, located the peer-to-peer file sharing program on one of them, and deleted the

1

program to prevent the ability for the file to be downloaded. (*Id.* ¶ 52).

Plaintiffs allege that Defendants learned of the shared file in spring 2009 and "should have learned" at that time that LabMD was "the *only* source" of the file, meaning that the file had not been downloaded or "spread anywhere on any peer-to-peer network." (*Id.* ¶¶ 68–72 (emphasis in original)). They further allege that, in retaliation for Plaintiffs' refusal to contract with Tiversa for data security services, Tiversa began to falsify data and create records showing that LabMD's file had spread and been downloaded by unknown individuals. (*Id.* ¶¶ 96–99). At some point during these events, the FTC began investigating LabMD's data security practices relating to this shared file, and Plaintiffs allege that Defendants knowingly accepted and used Tiversa's falsified records to assist their investigation. (*Id.*). Plaintiffs further allege that Defendants agreed with each other and with Tiversa that the firm would withhold from the FTC any exculpatory information about LabMD during their investigation. (*Id.* ¶ 100). Plaintiffs allege that in furtherance of this goal, Defendants worked with Tiversa to create a shell company to whom Tiversa would selectively give records and which the FTC would then subpoena for those records, thereby avoiding the risk that exculpatory information beneficial to Plaintiffs and harmful to Tiversa would be disclosed. (*Id.* ¶¶ 84–96, 104–05).

In early 2012, Plaintiffs allege that Daugherty "began to warn the public about the FTC's abuses" through "the press and social media and through a book." (*Id.* ¶ 127). Plaintiffs allege that Defendants escalated the intensity of their investigation, and ultimately recommended commencing an enforcement proceeding, in retaliation for this public criticism. In particular, Plaintiffs point to a September 7, 2012 interview Daugherty gave with an Atlanta newspaper, following which Defendants "ramped up" their investigation, and the July 2013 release of a trailer for Daugherty's book *The Devil Inside the Beltway*, followed three days later by Defendant Sheer's

recommendation that an enforcement action be brought against LabMD.  (*Id.* ¶¶ 127–32).

The FTC filed its administrative complaint against LabMD in August 2013.[1]  Over two years later, on November 19, 2015, an FTC administrative law judge issued an Initial Decision dismissing the complaint after concluding that LabMD had not engaged in unfair acts that were likely to cause substantial consumer injury under the FTC Act.[2]  The next day, November 20, 2015, Plaintiffs filed their Complaint in this case.  On July 29, 2016, the FTC issued an Opinion reversing the ALJ's decision and concluding that LabMD's data security practices constituted an unfair act within the meaning of the FTC Act.[3]  Defendants have now moved to dismiss all claims in this case.  (ECF No. 13).

## II.    LEGAL STANDARD

### A.  Federal Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and, as such, a district court "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); *see also* Fed. R. Civ. P. 12 ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  "Limits on subject-matter jurisdiction 'keep the federal courts within the bounds the Constitution and Congress have prescribed,' and those limits 'must be policed by the courts on their own initiative.'" *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  Such limits are especially important in the agency review context, where "Congress is

---

[1]  *See* Compl., *In re LabMD, Inc.*, No. 9357 (F.T.C. Aug. 29, 2013), https://www.ftc.gov/sites/default/files/documents/cases/2013/08/130829labmdpart3.pdf.

[2]  *See* Initial Decision, *In re LabMD, Inc.*, No. 9357 (F.T.C. Nov. 19, 2015), https://www.ftc.gov/system/files/documents/cases/151113labmd_decision.pdf.

[3]  *See* Opinion of the Commission, *In re LabMD, Inc.*, No. 9357 (F.T.C. July 29, 2016), https://www.ftc.gov/system/files/documents/cases/160729labmd-opinion.pdf.

free to choose the court in which judicial review of agency decisions may occur." *Am. Petroleum Inst. v. SEC*, 714 F.3d 1329, 1332 (D.C. Cir. 2013) (internal quotation marks omitted).  The law presumes that "a cause lies outside [the court's] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Thus, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).

In evaluating a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  Nevertheless, "'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.'" *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).  Further, under Rule 12(b)(1), the court "is not limited to the allegations of the complaint," *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987), and "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case," *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C.2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

**B.  Federal Rule 12(b)(6)**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim tests the legal

sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when it alleges sufficient facts to permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007) (internal quotation marks omitted). Evaluating a 12(b)(6) motion is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.    DISCUSSION

### A.  Subject Matter Jurisdiction

Defendants first argue that this court lacks subject matter jurisdiction to hear Plaintiffs' claims because those claims may be brought only before the FTC in the agency's administrative proceedings. The Supreme Court held in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), that district courts lack jurisdiction to hear certain cases if "Congress has allocated initial review to an administrative body [and] such intent is 'fairly discernible in the statutory scheme.'" *Id.* at 207 (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984)). To determine whether Congress "intended to preclude initial judicial review," courts look to "the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." *Id.* (internal citation omitted). The court must also consider "whether [a plaintiff's] claims are of the type Congress intended to be reviewed within this statutory structure." *Id.* at 212. Central to this question is whether the claims are "wholly 'collateral' to a statute's review

provisions and outside the agency's expertise" and whether "a finding of preclusion could foreclose all meaningful judicial review."  *Id.* at 212–13 (quoting *Heckler v. Ringer*, 466 U.S. 602, 618 (1984)); *see also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (restating *Thunder Basin* principles).

      1.  <u>Statutory Scheme</u>

The court first considers whether Congress's intent to require initial review of Plaintiffs' claims by the FTC is "fairly discernible in the statutory scheme."  *Thunder Basin*, 510 U.S. at 207. In the FTC Act, Congress directs the FTC to prevent persons, partnerships, or corporations "from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a)(2).  Upon finding that there is "reason to believe" a corporation has engaged in conduct that violates the FTC Act, the FTC must issue a complaint upon such corporation and hold a hearing to review evidence of the alleged unlawful acts.  15 U.S.C. § 45(b).  The charged entity has "the right to appear at the place and time so fixed and show cause why an order should not be entered by the [FTC] requiring [it] to cease and desist from the violation of the law so charged in said complaint."  *Id.*  If the FTC concludes that the corporation engaged in unlawful acts, it has the authority to issue a cease-and-desist order, and if the charged party does not comply with the order, it may bring a civil action in U.S. district court seeking an injunction and recovery of civil penalties.  15 U.S.C. §§ 45(b), (l), (m).  The corporation ordered to cease and desist its activities may obtain review from a U.S. Court of Appeals within sixty days.  15 U.S.C. § 45(c).

This Circuit recently analyzed whether an analogous statutory scheme involving administrative enforcement by the U.S. Securities and Exchange Commission precluded jurisdiction for a constitutional challenge in district court.  *See Jarkesy v. SEC*, 803 F.3d 9 (D.C.

Cir. 2015).  There, as here, the statute provided for a charged—or "aggrieved"—individual to seek review in a court of appeals following adjudication before the agency, and for the reviewing court to exercise "exclusive" jurisdiction to "affirm or modify and enforce or to set aside the order in whole or in part."  *Id.* at 16 (quoting 15 U.S.C. § 78y(a)(3)); *see also* 15 U.S.C. § 45(d) (identical language in FTC Act).  After reviewing that statute's details regarding the appellate review of the agency's decisions, the Circuit concluded that it was "fairly discernible that Congress intended to deny [aggrieved respondents] an additional avenue of review in district court."  *Jarkesy*, 803 F.3d at 17 (quoting *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2134 (2012)) (alteration in *Jarkesy*). The statutory schemes for the FTC's and the SEC's proceedings are also similar to those of the Mine Safety and Health Administration considered by the Supreme Court in *Thunder Basin*.  *See id.* at 16 (comparing statutes).

As in *Jarkesy*, Plaintiffs here "do not seriously dispute that Congress meant to channel most challenges to the [agency's] administrative proceedings through the statutory review scheme."  803 F.3d 17.  Therefore, applying the Circuit's guidance in *Jarkesy*, the court finds that Congress intended to allocate initial review of at least some claims to the FTC.

2.  <u>Wholly Collateral to the Agency's Review</u>

As in *Jarkesy*, Plaintiffs instead argue that their claims are not "of the type Congress intended to be reviewed within this statutory structure."  803 F.3d at 17 (quoting *Thunder Basin*, 510 U.S. at 212).  Addressing this argument requires the court to proceed to the next phase of the *Thunder Basin* framework—determining whether the claims are "wholly 'collateral' to a statute's review provisions and outside the agency's expertise."  *Thunder Basin*, 510 U.S. at 212–13.  In *Heckler*, the Supreme Court explained that a plaintiff's claims are not "collateral" if "at bottom" they are an attempt to reverse the agency's decisions.  466 U.S. at 614, 618.  Similarly, in *Elgin*,

the Court considered whether the plaintiffs' constitutional claims were merely "the vehicle by which they seek to reverse" the agency's decisions. 132 S. Ct. at 2139–40. Additionally, in *Jarkesy*, this Circuit concluded that the plaintiffs' constitutional challenges were not collateral because they were "inextricably intertwined with the conduct of the very enforcement proceeding that statute grants the [agency] the power to institute and resolve as an initial matter." 803 F.3d at 23 (quoting *Jarkesy v. SEC*, 48 F. Supp. 3d 32, 38 (D.D.C. 2014)). The *Jarkesy* court further stated that "[i]t is difficult to see how [the claims] can still be considered collateral to any Commission orders or rules from which review might be sought, since the ALJ and the Commission will, one way or another, rule on those claims and it will be the Commission's order that [the plaintiff] will appeal." *Id.* (internal quotation omitted) (first alteration in original).

Here, the parties disagree as to whether Plaintiffs' *Bivens* claims against individual FTC investigators are "inextricably intertwined" with their objections to the FTC's enforcement proceedings already raised directly before the FTC. In the court's view, *Bivens* claims pose a distinct question from the one addressed by the Circuit in *Jarkesy* because Plaintiffs' claims are inherently different from those that they may have—and did—bring before the FTC. Plaintiffs allege that specific FTC employees conspired to violate Plaintiffs' rights and caused monetary injury during the course of their investigation and enforcement proceeding. In order to seek redress for these injuries, Plaintiffs have brought their *Bivens* claims to this court because they simply were unable to do so before the agency. The remedy sought by Plaintiffs is not a reversal, or even reconsideration, of the FTC's decision, as the Supreme Court found dispositive in *Elgin* and *Heckler*. If Plaintiffs sought reversal or reconsideration, that remedy would clearly fall within the FTC's own jurisdiction, or within the court of appeal's "exclusive" jurisdiction upon review. *See* 15 U.S.C. § 45(b)–(d). However, the FTC Act does not authorize the agency to award

monetary damages for, much less even consider, the allegedly tortious actions of agency employees committed during the investigation or enforcement proceeding. *See* 15 U.S.C. § 45(b) (providing FTC's sole authority to issue cease-and-desist orders). Indeed, the FTC Act provides no path for an individual to affirmatively challenge the acts of FTC officials within the administrative process, and any such challenges must be raised as defenses. If all claims were required to be brought before the agency, an aggrieved individual would be blocked from ever raising their tort claims if the FTC ultimately decided not to pursue adjudication.

The legal challenge in this case therefore differs significantly from that in *Thunder Basin*, in which the plaintiff sought pre-enforcement injunctive relief to halt the agency's potential enforcement action, *see* 510 U.S. at 205–06, and in *Jarkesy*, where the plaintiffs similarly sought emergency injunctive relief to block a scheduled administrative hearing, *see* 48 F. Supp. 3d at 35–36. While Defendants attempt to blur the line between this case and *Jarkesy* by arguing that plaintiffs in both cases "assert purported constitutional challenges to the grounds for and conduct of an on-going administrative proceeding," (Def. Mem. at 9), this ignores the basis of Plaintiffs' *Bivens* claims and the monetary remedy sought for the damage to their business operations. It is true that Plaintiffs may raise similar allegations as affirmative defenses against the FTC, though only in an attempt to show cause why they should not be subject to an order from the FTC, as the statute gives them the right to do. *See* 15 U.S.C. § 45(b). However, here Plaintiffs only seek monetary relief for officials' conduct during the investigation. That the challenged *acts* occurred during the FTC investigation and proceeding does not, in this court's view, determine whether the *claims* are collateral to the agency's review. Indeed, nothing in the FTC Act or the relevant case law suggests that a claim for monetary damages would be akin to those claims that prior courts have determined are not "collateral" to the agency's review, *i.e.* those seeking to circumvent or

reverse an agency's administrative decision.  Therefore, the court finds that Plaintiffs' *Bivens*

claims are wholly collateral to their ongoing enforcement proceedings.

      3.  <u>Meaningful Judicial Review</u>

      Finally, in determining whether Plaintiffs' claims must be adjudicated by the agency, this

court must also consider if "a finding of preclusion could foreclose all meaningful judicial review."

*Thunder Basin*, 510 U.S. at 212–13.  The court concludes that dismissing Plaintiffs' claims would

indeed foreclose all judicial review, meaningful or otherwise.  In *Jarkesy*, the Court determined

that the SEC was competent to decide the plaintiffs' constitutional challenges, including a facial

non-delegation challenge to the underlying statute, because even if the *agency* could not declare a

statute unconstitutional, a reviewing court of appeals could do so in the course of determining

whether to uphold or reserve the agency's order.  803 F.3d at 19 (citing *Elgin*, 132 S.Ct. at 2136–

37).  However, these cases are distinguishable because of the remedy Plaintiffs seek here.  In cases

such as *Jarkesy* and *Thunder Basin*, the plaintiffs sought a reversal of or injunction against an

agency's enforcement proceedings by claiming that the agency had no constitutional authority to

proceed with its enforcement—a question that appellate courts can readily analyze upon review of

an agency's order.  Here, however, Plaintiffs seek monetary damages completely apart from the

FTC's ultimate decision to issue an order against them, and whether to award damages is not an

issue that an appellate court can or would consider on an appeal from an FTC order.  Therefore,

because Plaintiffs' request for damages will not be considered before the agency or on appeal of

the agency's order, the court finds that dismissal here would result in the deprivation of meaningful

judicial review.

      In sum, based on its review of the framework laid out in *Thunder Basin* and recently

analyzed by this Circuit in *Jarkesy*, this court concludes that Plaintiffs' claims are collateral to the

ongoing administrative proceedings before the FTC and dismissal would preclude all meaningful judicial review of these claims. Therefore, the court finds that it has subject matter jurisdiction to continue consideration of Plaintiffs' case.

### 4. Claim Preclusion

Defendants further argue that the question of whether this court has jurisdiction has already been fully litigated before and decided in *LabMD, Inc. v. FTC*, 776 F.3d 1275 (11th Cir. 2015), and this court is therefore precluded from reconsidering the issue. In this Circuit, the "doctrine of issue preclusion, or collateral estoppel, bars 'successive litigation of an issue of fact or law actually litigated and resolved' that was 'essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 & n.5 (2008)); *see also Yamaha Corp. of Am. v. United States*, 961 F.2d 245 (D.C. Cir. 1992) (laying out three factors for courts to evaluate issue preclusion). Courts also apply this doctrine to "threshold jurisdictional issues." *Nat'l Ass'n of Home Builders*, 786 F.3d at 41.

In *LabMD, Inc. v. FTC*, the Eleventh Circuit found that the district court lacked subject matter jurisdiction over LabMD's Administrative Procedure Act ("APA") claim against the FTC for alleged *ultra vires* conduct because neither the FTC's filing of an administrative complaint nor its denial of LabMD's motion to dismiss were final agency actions reviewable under the APA. *See* 776 F.3d at 1277–79. The Circuit court then determined that LabMD's claims were unreviewable even apart from the APA, as the constitutional claims brought against the FTC seeking a preliminary and permanent injunction against continued FTC enforcement were required to be brought before the agency under *Thunder Basin*. *Id.* at 1279–80; *see also* Compl. at 38–40, Case No. 14-cv-0810 (N.D. Ga. Mar. 20, 2014) (requesting preliminary and permanent injunctive relief).

Unlike in *LabMD, Inc. v. FTC*, Plaintiffs here bring *Bivens*-type constitutional tort claims against three agency employees, seeking monetary damages.  While Defendants raise similar jurisdictional arguments to those raised in the district court and at the Eleventh Circuit, this court concludes that issue preclusion does not bar consideration of the jurisdictional issues here, as the precise issue of jurisdiction over Plaintiffs' *Bivens* claims has not been actually litigated by the parties in a prior case.  *See Yamaha Corp.*, 961 F.2d at 254 (first factor to evaluate is whether "the same issue now being raised [was] contested by the parties and submitted for judicial determination in the prior case").  While many of the underlying facts overlap with the prior case, and Defendants raise similar jurisdictional arguments, here Plaintiffs' claims and the named defendants are different from that earlier case.  Therefore, this court is not barred by issue preclusion from determining that it has subject matter jurisdiction over the present case.

## B.  Sufficiency of Plaintiffs' *Bivens* Claims

In determining whether Plaintiffs have stated *Bivens* claims, the court must first "identify the exact contours of the underlying right[s] said to have been violated" and determine "whether the plaintiff[s] ha[ve] alleged a deprivation of a constitutional right at all."  *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998).

### 1.  First Amendment

In Counts I through III, Plaintiffs allege that Defendants violated their First Amendment rights, including freedom of speech, freedom of the press, and the right to petition the government for redress of grievances.  (Compl. ¶¶ 153–61).  While the Supreme Court has not expressly held that a plaintiff may seek monetary damages for First Amendment violations, courts in this Circuit have concluded that such a remedy is available, particularly in the case of retaliatory acts.  *See Patterson v. United States*, 999 F. Supp. 2d 300, 307–11 (D.D.C. 2013) (collecting cases); *Navab-*

*Safavi v. Broad. Bd. of Governors*, 650 F. Supp. 2d 40, 66 (D.D.C. 2009) (retaliatory prosecution); *Dellums v. Powell*, 566 F.2d 167, 194–96 (D.C. Cir. 1977) (retaliatory arrest).

> ### a. *Elements of the Claim*

To establish a First Amendment violation, Plaintiffs must allege "(1) that [they] engaged in protected conduct, (2) that the government 'took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff[s'] position from speaking again;' and (3) that there exists 'a causal link between the exercise of a constitutional right and the adverse action taken against [them].'" *Doe v. District of Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015) (quoting *Aref v. Holder*, 774 F. Supp. 2d 147, 169 (D.D.C. 2011)). For the third element, causation "may be inferred—especially at the pleading stage—when the retaliatory act follows close on the heels of the protected activity." *Smith v. De Novo Legal, LLC*, 905 F. Supp. 2d 99, 104 (D.D.C. 2012). Indeed, the D.C. Circuit "has held that a close temporal relationship may alone establish the required causal connection," *Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003), if "the two events are 'very close' in time," *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)).

Plaintiffs alleges that in early 2012 Daugherty "began to warn the public about the FTC's abuses (orchestrated by Sheer and Yodaiken) through the press and social media and through a book." (Compl. ¶ 127). Specifically, Plaintiffs state that Daugherty criticized the FTC in a September 2012 interview with the Atlantic Business Chronicle, and on July 19, 2013, he posted on the internet a trailer for his book, *The Devil Inside the Beltway*, about his experience with Sheer, Yodaiken, and others at FTC. (*Id.* ¶¶ 128, 131). Plaintiffs also allege that Sheer and Yodaiken "ramped up their investigative efforts against" them immediately after Daugherty's interview in September 2012, and then three days after Daugherty posted the trailer for his book, on July 22,

2013, Sheer recommended that an enforcement action be commenced against Plaintiffs.  (*Id.* ¶¶ 129–30, 132).  Given the close proximity in time between Daugherty's activity criticizing the FTC officials and the FTC's decisions with regard to Plaintiffs, the court finds that Plaintiffs have articulated sufficient factual allegations to support the elements of a First Amendment claim against Sheer and Yodaiken.

However, Plaintiffs have not alleged any facts supporting a claim against Defendant Settlemyer for violating their First Amendment rights.  With respect to Settlemyer, Plaintiffs plead only that he knew or should have known that the evidence collected from Tiversa was unlawfully obtained, falsified, or otherwise not trustworthy.  (*See* Compl. ¶¶ 1, 66–71, 82–86, 96–100, 103–04, 118–19 (allegations involving Settlemyer)).  Because Plaintiffs' *Bivens* claims are founded on an allegation that government employees' personal conduct violated their rights, "[t]he complaint must at least allege that the defendant federal official was personally involved in the illegal conduct."  *Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) (citing *Tarpley v. Greene*, 684 F.2d 1, 9–11 (D.C. Cir. 1982)).  Having failed to allege any facts with regard to Settlemyer's knowledge of Plaintiffs' protected activity or his actions following that activity, Plaintiffs have failed to state a claim against him.

At this stage of the litigation, accepting Plaintiffs' allegations as true and resolving all possible inferences in their favor, the court finds that Plaintiffs' have stated a plausible claim that Defendants Sheer and Yodaiken, but not Settlemyer, violated Plaintiffs' First Amendment rights.

### b.   *Special Factors Counseling Hesitation*

The Supreme Court in *Bivens* recognized a cause of action for monetary damages in part because "no special factors counsel[led] hesitation in the absence of affirmative action by Congress."  *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396

(1971).  In their *Bivens* analyses, courts must therefore determine whether "special factors counsel hesitation" against recognizing a plaintiff's claim for monetary damages.  *See, e.g.*, *Meshal v. Higgenbotham*, 804 F.3d 417, 420–22 (D.C. Cir. 2015) (discussing the role of special factors in *Bivens* cases).  One such factor is "whether an alternative remedial scheme is available." *Id.* at 425 (citing *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).  In *Bush v. Lucas*, 462 U.S. 367 (1983), for example, the Supreme Court declined to recognize a federal employee's *Bivens* claim alleging First Amendment violations because Congress had provided a comprehensive scheme for monetarily redressing such allegations, and indeed the plaintiff had already been awarded monetary damages through that administrative scheme.  *Id.* at 371, 389–90.

Defendants argue that the FTC Act's administrative process, as described above in Section III.A.1, creates such an alternative scheme because it "permits regulated parties to protect their constitutional and other interests."  (Def. Mem. at 20).  However, the mere existence of an administrative scheme is not enough to preclude consideration of a *Bivens* claim; the court must consider whether Congress "created a comprehensive scheme that was specifically designed to provide full compensation to" the individuals whose constitutional rights were violated.  *Bush*, 462 U.S. at 390 (Marshall, J., concurring).  As discussed above in Sections III.A.2 and III.A.3, the court finds nothing in the FTC Act that permits an aggrieved party to bring a tort claim to the FTC, as any constitutional arguments may only be raised as defenses once a complaint is filed. Moreover, the FTC has only the authority to issue or not issue a cease-and-desist order, and has no power to award monetary damages.  Therefore, the court has little difficulty concluding that in enacting the FTC Act, Congress did not create a comprehensive scheme designed to provide compensation for Plaintiffs' claims here, and there are no other special factors that might persuade the court to hesitate in recognizing Plaintiffs' claims.

c.  *Statute of Limitations*

With respect to Plaintiffs' First Amendment claims, Defendants argue that the claims against Yodaiken and Sheer must be dismissed because the statute of limitations expired before Plaintiffs brought this suit.  Defendants contend that this court should apply a three-year statute of limitations, as this is the time frame within which tort suits must be brought under D.C. Code § 12-301(8), and courts should "ordinarily look to analogous provisions in state law as a source of a federal limitations period."  *Doe v. DOJ*, 753 F.2d 1092, 1444 (D.C. Cir. 1985).  Although the Complaint plainly states that early retaliatory acts were taken following a September 2012 news article (*see* Compl. ¶¶ 128–30), Plaintiffs—for reasons that are unclear to the court—misstate their own Complaint and argue in response that their earliest allegations involving retaliation are in September 2014, so the filing of their Complaint in November 2015 was well within the three-year period.  This response is without merit, as it is based on Plaintiffs' incorrect recitation of the facts alleged in their own Complaint.

However, the courts notes that Plaintiffs frame the alleged retaliation as a series of ongoing acts, claiming that Defendants increased the intensity of the investigation in 2012 and 2013, and later in 2013 elevated the matter to an enforcement proceeding following additional public criticism by Daugherty.  (*See* Compl. ¶¶ 128–32).  As a result, though neither party articulated it in their briefs, the court is inclined to apply the "continuing tort doctrine" to Plaintiffs' *Bivens* claims.  Under this doctrine, "[w]hen a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases."  *Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984).  In *Whelan v. Abell*, 953 F.2d 663 (D.C. Cir. 1992), for example, the D.C. Circuit wrote that "a lawsuit is a continuous, not an isolated event, because its effects persist from the initial filing to the final disposition of the case. . . . A defendant subject to a

lawsuit is likely to suffer damage not so much from the initial complaint but from the cumulative costs of defense and the reputational harm caused by an unresolved claim." *Id.* at 673.  The case at bar appears to be sufficiently analogous for the court to conclude that the statute of limitations period only began to run when Defendants' alleged retaliatory acts ended.  Taking the July 2013 date on which Sheer recommended commencement of an enforcement action as the earliest possible date for the end of the retaliation, Plaintiffs' claims were filed eight months prior to the expiration of the three-year window proposed by Defendants.  The court therefore concludes that, even in the absence of a precise calculation for when Plaintiffs' window to file began or ended, Plaintiffs filed their Complaint within that window.

In sum, the court finds that Plaintiffs have plausibly stated First Amendment claims for which they may seek monetary damages against Sheer and Yodaiken, and neither consideration of special factors nor the statute of limitations preclude further review.

### 2.  Fourth Amendment

In Count IV, Plaintiffs allege that Defendants violated their Fourth Amendment rights. (Compl. ¶¶ 162–64).  The Fourth Amendment guards against "unreasonable searches and seizures" of individuals' "persons, houses, papers, and effects."  U.S. Const. amend. IV.  Plaintiffs' Complaint does not articulate what, if anything, was unlawfully and unreasonably searched or seized, and how Defendants participated in the unlawful search or seizure.  Indeed, the Complaint appears to be completely devoid of facts which could plausibly support a Fourth Amendment claim.  Moreover, Plaintiffs failed to respond to Defendants' argument that they alleged no facts to support such a claim.  (*See* Pl. Mem. at 29–32 (responding only to Defendants' First Amendment arguments)).  Because Plaintiffs appear to have conceded this issue, and the court can identify nothing in the Complaint to support a Fourth Amendment claim, Defendants' motion to dismiss is

GRANTED as to Count IV.

    3. <u>Fifth Amendment</u>

In Counts V and VI, Plaintiffs allege that Defendants violated their procedural and substantive due process rights in violation of the Fifth Amendment.  (Compl. ¶¶ 165–70).

    *a.  Procedural Due Process*

"A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 538 (D.C. Cir. 2015) (quoting *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009)).  This Circuit has noted that "the due process clause requires, at a minimum, that the government provide notice and some kind of hearing before final deprivation of a property interest." *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991).  Plaintiffs do not articulate in their Complaint or Opposition what interest, whether liberty or property, has been deprived without necessary process; however, construing their allegations liberally, the court finds that Plaintiffs appear to allege that because LabMD ultimately closed due to the expenses of the investigation and enforcement proceedings, Daugherty was deprived of the ability to pursue his chosen profession.  (*See* Compl. ¶ 152).

The Supreme Court has held that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." *Greene v. McElroy*, 360 U.S. 474, 492 (1959); *Kartseva v. Dep't of State*, 37 F.3d 1524, 1529 (D.C. Cir. 1994) (stating that *Greene* recognized a constitutional "right to follow a chosen trade or profession").  To state a claim for the deprivation of this right, Plaintiffs must allege that "the government formally debar[red] [them] from certain work or implement[ed] broadly preclusive criteria that prevent[ed] pursuit of a chosen

career." *Abdelfattah*, 787 F.3d at 538 (quoting *Trifax Corp. v. Dist. of Columbia*, 314 F.3d 641, 643–44 (D.C. Cir. 2003)).  This Circuit has found that "this 'liberty concept' protects corporations as well as individuals." *Trifax Corp.*, 314 F.3d at 643 (citing *Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953, 961–62 (D.C. Cir. 1980)).

Plaintiffs allege that "[t]hrough the Federal Defendants' abuses of power and disregard for the core constitutional rights of LabMD and Daugherty, the Federal Defendants have put LabMD out of business and laid it to rest.  In addition, they have deprived Daugherty of his right to make a living from an extremely valuable asset that he built from the ground up."  (Compl. ¶ 152). Plaintiffs also allege that Defendants' investigation of LabMD "caus[ed] [its] insurance carriers to cancel LabMD's insurance coverage and caus[ed] crippling economic hardship and reputational harm."  (*Id.* ¶ 116).  As of September 2012, three years into Defendants' investigation but before the alleged "ramp[ing] up," Plaintiffs claim they had already spent approximately $500,000 to defend themselves and comply with the investigative demands.  (*Id.* ¶¶ 128, 130).  They further allege that during the investigation and enforcement proceedings, Defendant Sheer "punish[ed] LabMD" when he "filed or caused to be filed burdensome, duplicative, and oppressive discovery requests."  (*Id.* ¶ 143).  Plaintiffs further allege throughout their Complaint that all three Defendants were involved in using falsified evidence and refusing to acknowledge exculpatory evidence in their possession.  (*See, e.g.*, Compl. ¶¶ 118, 133).

Absent from Plaintiffs' Complaint, however, is any allegation that they were deprived of any process to which they entitled.  A procedural due process claim is inherently tethered to an allegation that a plaintiff was not given "the opportunity to be heard 'at a meaningful time and in a meaningful manner'" in connection with the deprivation of their liberty or property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  Therefore, to state such a claim, Plaintiffs must

allege as a basic element that Defendants acted without due process of law.  *See Propert*, 948 F.2d at 1331.  Not only do Plaintiffs not state what process they were entitled to, but they also fail to articulate why the hearings held by the FTC throughout the enforcement proceedings were insufficient.  (*See* Compl. ¶ 126 (referencing two hearings)).[4]

At a minimum, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  As the court noted above, Plaintiffs failed to expressly articulate specifically what property or liberty interested they allege was deprived, or what process they were due.  If the court construes their Complaint liberally, it can discern an allegation relating to a liberty interest to pursue a chosen profession, but Plaintiffs have simply not alleged any facts to support their claim that this deprivation occurred without due process of law.  Therefore, the court concludes that Plaintiffs have failed to state a claim for violation of their procedural due process rights, and Defendants' motion is GRANTED as to Count V.

### b.  Substantive Due Process

The Fifth Amendment additionally protects individuals when their property or liberty interests are deprived not because of a "denial of fundamental procedural fairness . . . [but from] the exercise of power without any reasonable justification in the service of a legitimate governmental objective."  *County of Sacramento*, 523 U.S. at 845–46.  However, only "deprivations of liberty caused by 'the most egregious official conduct,' . . . may violate the Due Process Clause."  *Chavez v. Martinez*, 538 U.S. 760, 774 (2003) (plurality opinion) (quoting *Lewis*, 523 U.S. at 846).  Because the path to recovery is narrower under a substantive due process theory,

---

[4]  In the FTC's 2016 Opinion, it also described an evidentiary hearing that began in May 2014 and was completed in July 2015 in which Plaintiffs called numerous expert witnesses.  *See* Opinion, *In re LabMD, Inc.*, No. 9357 (F.T.C. July 29, 2016).

the court must consider "the threshold question [of] whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8; *see also Abdelfattah*, 787 F.3d at 540. As discussed above, neither Plaintiffs' Complaint nor Opposition articulate precisely what interest has been deprived. Even assuming that Plaintiffs intended to allege a deprivation of the above-described liberty interest in pursuing a profession, Plaintiffs do not to allege any facts that are so egregious as to shock the conscience. Simply stated, Plaintiffs allege that Defendants knowingly used falsified evidence in the course of their investigation and ignored exculpatory evidence. If true, such actions may certainly be considered unethical and improper, but do not rise to the level of "the most egregious official conduct." *Abdelfattah*, 787 F.3d at 540. The court therefore concludes that Plaintiffs have failed to state a claim for a substantive due process violation, and so Defendants' motion is GRANTED on Count VI.

### 4. Civil Conspiracy under Federal Common Law

Finally, in Count VII, Plaintiffs allege that Defendants engaged in a civil conspiracy to deprive Plaintiffs of their constitutional rights. (Compl. ¶¶ 171–73). In this Circuit, "[a] civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, . . . the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in that damage." *Lyles v. Hughes*, 83 F. Supp. 3d 315, 323 (D.D.C. 2015) (quoting *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997)). Therefore, "an essential element of a conspiracy claim is an allegation that the parties to the conspiracy come to an agreement or meeting of the minds." *Id.* (internal quotation omitted). A plaintiff must offer more than conclusory allegations that there was an agreement between defendants. *See id.*; *see also Bush v. Butler*, 521 F. Supp. 2d 63, 68–69 (D.D.C. 2007) (dismissing

civil conspiracy claim because "plaintiff merely concludes that there was an agreement among the defendants to deprive him of access to the courts").

Defendants argue that Plaintiffs have not alleged the elements of a conspiracy claim; Plaintiffs did not respond to this argument in their Opposition. The court agrees with Defendants, and finds that, even accepting all of Plaintiffs' allegations as true, they fail to allege facts to show the existence of an agreement among the Defendants to deprive Plaintiffs of their constitutional rights. Instead, Plaintiffs allege the following: Defendants "expressly or tacitly agreed and conspired in 2009 that" Tiversa would "provide whatever evidence the FTC needed in its investigation and enforcement of companies on the List, even if the evidence was fraudulent," "provide the FTC false evidence of source and spread," and "withhold from production to the FTC and third parties documents and things that were exculpatory to LabMD and Daugherty," and they further "agreed and conspired in 2009 to hurt, if not destroy, LabMD and to deprive Daugherty of his livelihood and property." (Compl. ¶¶ 96, 97, 100, 101). Such conclusory statements do not allege with any specificity the "events, conversations, or documents indicating there was an agreement between the defendants to violate [their] rights." *Butler*, 521 F. Supp. 2d at 68–69. Because Plaintiffs appear to have conceded this claim, and the court can discern no allegations from the Complaint that plausibly support a conspiracy claim, the court GRANTS Defendants' motion on Count VII.

### C. Absolute and Qualified Immunity

#### 1. Absolute Immunity (Sheer)

Defendants ask this court to find that during the alleged events Sheer was entitled to absolute immunity from suit. The Supreme Court has recognized that certain government officials have special functions requiring full exemption from liability, one of which is when they "are

responsible for the decision to initiate or continue a proceeding subject to agency adjudication." *Butz v. Economou*, 438 U.S. 478, 516 (1978).  Defendants argue that Sheer was entitled to absolute immunity with regard to Plaintiffs' "allegations that he recommended the enforcement action, then served discovery burdening plaintiffs."  (Def. Mem. at 46).  However, Defendants "bear[] the burden of showing that such immunity is justified for the function in question," *Burns v. Reed*, 500 U.S. 478, 486 (1991), and they have failed to present the court with any information about Sheer's job responsibilities and precise role in the alleged activity to determine whether he might be entitled to absolute immunity.  Pending further development of the factual record, the court will deny Defendants' motion to dismiss without prejudice on this ground.

### 2. Qualified Immunity (All Defendants)

Defendants also request that this court find that all Defendants are immune from suit because they possess qualified immunity.  Government officials may be protected by qualified immunity only if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step analysis for qualified immunity, including "first, whether the alleged facts show that the individual's conduct violated a statutory or constitutional right, and, second, whether that right was clearly established at the time of the incident."  *Atherton v*, 567 F.3d at 689 (citing *Saucier*, 533 U.S. at 200).  In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Court later clarified that district courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 236.  To determine if a right was clearly established, the court considers whether "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable

official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In the court's view, Plaintiffs' First Amendment rights to criticize the actions of the federal government without fear of government retaliation are as clearly established as can be, and a serious escalation of an agency's investigation or enforcement against Plaintiffs for publicly criticizing the agency would appear to violate that clearly established constitutional right. Therefore, the court DENIES Defendants' motion to dismiss based on qualified immunity. However, as discussed above, the court finds that a greater factual record is required before it can determine the precise nature of Sheer's and Yodaiken's activities and whether they did in fact clearly violate Plaintiff's First Amendment rights, and so the court declines to conclusively determine whether Defendants Sheer or Yodaiken are entitled to qualified immunity in this suit.

Because the court determines that the doctrines of absolute or qualified immunity do not bar Plaintiffs' First Amendment claims at this stage of the litigation, the court therefore DENIES Defendants' motion on Counts I, II, and III as to Sheer and Yodaiken and GRANTS Defendants' motion on these Counts as to Settlmyer.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.


Date:  March 31, 2017


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge